**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| CARLOS DOE, LUIS DOE, ERNESTO DOE, and GABRIEL DOE,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>*Defendants*. | No. 1:23-cv-971 MLG-JMR |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs Carlos, Luis, Ernesto, and Gabriel Doe (collectively, "Plaintiffs"), move this Court to certify this case as a class action. In support of this Motion, Plaintiffs state:

1. This action is brought by Plaintiffs on their own behalf and on behalf of a class of those similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) against U.S. Immigration and Customs Enforcement ("ICE"), the U.S. Department of Homeland Security ("DHS"), and named ICE and DHS officials. ICE is an agency within DHS that is responsible for the housing and care of persons who are detained while in immigration proceedings and facing possible removal from the United States.

2. Facilities that detain noncitizens for ICE must comply with minimum standards set forth by ICE. The standards that ICE currently applies to the Torrance County Detention Facility ("TCDF") are the Performance-Based National Detention Standards 2011, as revised in December 2016 (the "PBNDS").

3. Federal law mandates that ICE cannot continue to fund a detention facility "if the two most recent overall performance evaluations received by the contracted facility are less than 'adequate' or the equivalent median score in any subsequent performance evaluation system." Consolidated Security, Disaster Assistance, and Continuing Appropriations Act of 2009, Pub. L. No. 110-329, Div. D, Tit. II (Sept. 30, 2008), 122 Stat. 3574. Congress first mandated that ICE follow this requirement in 2009, and Congress has renewed that mandate in every DHS appropriation since then. *E.g.*, Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, Div. F, Tit. II, § 214(a), 136 Stat. 4459, 4736 (Dec. 29, 2022). This requirement is hereinafter referred to as the "Two Strikes Mandate."

4. TCDF, a detention facility in Estancia, New Mexico, failed its 2021 overall performance evaluation, based on, among other things, unsafe and unsanitary living conditions and chronic and severe understaffing. ICE's private contractor, the Nakamoto Group, Inc. ("Nakamoto"), which conducted the inspection for the 2021 overall performance evaluation, reported that TCDF fell well "below[] recognized safety and hygiene standards" set by the American Correctional Association. Compl. ¶ 66. It also found that TCDF did not meet the PBNDS requirements for 22 components across 8 standards, and completely failed to meet the Food Service standard, which alone had 12 deficient components. Nakamoto's recommendation that TCDF be rated as "Does Not Meet Standards" was adopted by ICE on August 25, 2021, and ICE certified TCDF's failure of the 2021 overall performance evaluation.

5. Under the Two Strikes Mandate, ICE could not use the facility if it failed its next overall performance evaluation. As Defendants Burke and Wong advised ICE's El Paso Field Office on August 25, 2021, "ICE will have ***no choice*** but to immediately discontinue use of the

facility and remove all detainees" if it failed again. Compl. Ex. 2 (emphasis added).

6. This situation placed ICE in a bind, as it faced pervasive, persistent problems at the facility—problems of which both ICE and TCDF were already well aware but that the facility had not fixed. Accordingly, ICE began smoothing the path for assigning TCDF a passing rating in its next overall performance evaluation even if the actual conditions on the ground did not improve.

7. Despite ICE's efforts to avoid documentation of a second consecutive failure, from late 2021 onwards outside reports began to confirm that the actual conditions at TCDF remained grossly inadequate and were not being corrected.

8. These outside reports culminated on March 16, 2022, when the DHS Office of the Inspector General ("Inspector General") issued an unprecedented "Management Alert" to ICE, calling for the immediate removal from TCDF of all individuals detained there. The Inspector General based this urgent recommendation on, among other things, "critical staffing shortages that have led to safety risks and unsanitary living conditions," including inadequate access to drinking water, moldy and leaking sinks, broken toilets clogged with human waste, and vacant security posts. Compl. Ex. 4 at 2-5.

9. Yet in late March 2022, mere weeks after this occurred, Nakamoto conducted a sham inspection for TCDF's follow-up overall performance evaluation and issued a report recommending that ICE give TCDF a passing rating. On April 21, 2022, ICE adopted Nakamoto's recommendation and certified a passing rating based on that sham inspection, thereby evading the Two Strikes Mandate. In doing so, ICE disregarded a litany of contrary findings not only from the Inspector General, but also from ICE's own Contracting Officer responsible for the contract by which noncitizens are detained at TCDF. Moreover, ICE accepted assertions in Nakamoto's report

that it knew or should have known were untrue, and overlooked obvious, fundamental contradictions within the report.

10. Based on the inspections that took place around this time, and the actual conditions at TCDF, TCDF should have failed its 2022 follow-up overall performance evaluation. As a result, TCDF would have failed two consecutive overall performance evaluations and thus, pursuant to the Two Strikes Mandate, ICE should not have been permitted to continue detaining noncitizens at TCDF.

11. By engineering the sham 2022 follow-up overall performance evaluation of TCDF, ICE violated the Two Strikes Mandate. ICE's actions were arbitrary and capricious in certifying TCDF as "Meets Standards," thereby evading the Two Strikes Mandate statutorily mandated by Congress.

12. As a result, Plaintiffs and other similarly situated individuals continue to suffer from grossly inadequate conditions at TCDF.

13. The proposed class is defined as: All persons who are currently or will be detained by ICE at TCDF (the "Class").

14. The Class is an ever-changing group of individuals, and Class membership is inherently transitory. The length of time a person in ICE custody may spend detained at TCDF is subject to a number of unpredictable factors. Some people will be detained for weeks awaiting resolution of their immigration cases, while others will remain for months due to backlogs in case processing or delays in their proceedings. Some may be transferred to a different facility without notice for reasons entirely outside of their control, including at ICE's discretion to transfer people from one facility to another based on its operational needs. *See, e.g.*, *Tuong Huan Van Dinh v.*

*Reno*, 197 F.3d 427, 433–34 (10th Cir. 1999) (holding Attorney General has discretion under 8 U.S.C. § 1231(g) to "transfer aliens from one locale to another, as she deems appropriate"); *see also* PBNDS at 458, https://tinyurl.com/mrxs8np2 (providing a person in ICE custody will not be notified of an impending transfer until "immediately prior to transfer" and that ICE will not contact the person's attorney until "after the detaine[d] [person] is transferred"). Plaintiffs are currently in the Class, but during the pendency of this case, they could be relocated from TCDF, released from custody into the United States, or removed from the country. Meanwhile, other persons detained by ICE at TCDF whom Plaintiffs wish to represent will continue to suffer from the ongoing substandard conditions there.

15. When a class is "inherently transitory," as here, a class action does not become moot if the class representatives are subsequently relieved of the conditions that form the basis of their claims. *See Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *Dudley-Barton v. Serv. Corp. Intern*, 653 F.3d 1151, 1153 (10th Cir. 2011) (noting an exception to the mootness doctrine in class action lawsuits where the class is "inherently transitory [such] that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires," under which a class may be certified even though the named plaintiffs' claims have become moot). Due to the highly impermanent and unpredictable nature of the status of an individual as a detainee at TCDF, the Class is inherently transitory and the mootness exception applies.

16. Plaintiffs otherwise meet the Rule 23(a) elements required for class certification. First, the class is so numerous that joinder of all members is impracticable. For example, in September 2023, the number of people detained by ICE at TCDF was over 200 individuals per

5

day. *See* ICE, Detention Management: Detention Statistics (Sept. 29, 2023), available at https://tinyurl.com/ycysmux5. This number of proposed class members is sufficient to demonstrate the impracticability of joinder. *See Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270, 275 (10th Cir. 1977) (finding a class of 41 individuals to be sufficient to meet the numerosity requirement of Rule 23(a)(1)); *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978) (collecting cases in which classes with less than 40 members were found to satisfy the numerosity requirement).

17. Second, there are questions of law or fact common to the class, which include:

   a. Whether TCDF should have failed, and in fact constructively did fail, its 2022 follow-up overall performance evaluation because conditions at TCDF violated the PBNDS in fundamental ways;

   b. Whether ICE's certification of TCDF on April 21, 2022 as compliant with the PBNDS and the resulting decision to continue detaining noncitizens at TCDF was arbitrary and capricious and contrary to law; and

   c. Whether ICE's reliance on Nakamoto to conduct the March 2022 follow-up inspection, despite Nakamoto's extensive record of incompetence and unreliability, was arbitrary and capricious and contrary to law.

15. Given the commonality of the questions shared by all Class members, the adjudication of Plaintiffs' claims would be dispositive of the claims of other Class members. *See Menocal v. GEO Grp., Inc.* 882 F.3d 905, 916 (10th Cir. 2018) (holding that a class of individuals detained at a private contract immigration detention facility met the requirement of commonality due to common questions of law and fact pursuant to the facility's policy of forcing detained individuals to complete unpaid labor in violation of federal law).

16. Third, the claims of the proposed Class representatives are typical of those of the Class. *See id.* at 917 (describing typicality as requiring only that "the claims of the class representative and class members are based on the same legal or remedial theory"). Every member of the proposed Class shares the same claim based on ICE's improper certification of TCDF as compliant with the PBNDS. Every member of the Class is being detained unlawfully at TCDF because, had ICE conducted a proper follow-up overall performance evaluation of the conditions in the facility in spring 2022, ICE would have had no choice but to discontinue use of the facility based on the substandard conditions in July 2021 and spring 2022. The Class's common legal theories based on the same misconduct by Defendants support class certification. Moreover, every Class member's experience at TCDF is governed by common standards—the PBNDS. Most of the violations of the PBNDS at TCDF are, by their nature, applicable to all noncitizens detained there. For example, among other violations, Plaintiffs complain of unsanitary conditions; lack of necessary staffing; inadequate food portions and quality; improper food safety; deprivation of visitation with family; insufficient and delayed medical care; lack of safe drinking water; and sinks, toilets, and showers that are insufficient, unsanitary, and frequently broken. These issues impact all members of the Class, and Plaintiffs' claims are typical of those experienced by other people detained by ICE at TCDF.

17. Fourth, the named Plaintiffs will fairly and adequately represent the Class. *See In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1112 (10th Cir. 2001) (finding adequacy in a class representative when "its interests were aligned with those of the other class members"). Plaintiffs have no interests separate from those of the Class and seek no relief in this litigation other than the relief sought on behalf of the Class. Plaintiffs' counsel will also fairly and adequately

represent the interests of the Class.

18. The further requirements of Federal Rule of Civil Procedure 23(b)(2) are met because Defendants have at all times acted and refused to act on grounds generally applicable to the Class, thereby making appropriate declaratory and final injunctive relief with respect to the Class as a whole.

19. Plaintiffs' counsel are appropriate counsel to be appointed as counsel for the Class pursuant to Federal Rule of Civil Procedure 23(g) and should be appointed. Undersigned counsel are experienced in class action, civil rights, and immigrants' rights litigation. For example, counsel from the National Immigrant Justice Center and the American Civil Liberties Union of New Mexico have significant experience in immigration litigation, including as it relates to immigration enforcement and detention and challenges under the Administrative Procedure Act. Counsel from Quinn Emanuel Urquhart & Sullivan, LLP, and Innovation Law Lab have significant experience in federal civil and class action litigation.

20. Plaintiffs may seek leave to conduct limited discovery related to class certification before filing evidence and further legal arguments supporting this Motion.

21. Plaintiffs request a status hearing with the Court to set an appropriate briefing schedule with respect to this Motion.

Accordingly, Plaintiffs ask the Court to certify the Class as defined above, and to give Plaintiffs leave to represent the Class of similarly situated individuals in this case.

Dated: November 3, 2023 　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　By:  */s/ Rebecca Sheff*

| | |
|---|---|
| Mark Feldman<br>Mark Fleming<br>Mary Georgevich<br>NATIONAL IMMIGRANT JUSTICE CENTER<br>224 S. Michigan Ave., Suite 600<br>Chicago, IL 60604<br>312-660-1370<br>mfeldman@heartlandalliance.org<br>mfleming@heartlandalliance.org<br>mgeorgevich@heartlandalliance.org<br><br>Tess Hellgren<br>Alison Coutifaris<br>INNOVATION LAW LAB<br>333 SW 5th Ave., Suite 200<br>Portland, OR 97204<br>503-922-3042<br>tess@innovationlawlab.org<br>alison.c@innovationlawlab.org<br><br>Rebecca Sheff<br>Max Isak Brooks<br>ACLU OF NEW MEXICO<br>P.O. BOX 566<br>Albuquerque, NM 87103<br>(505) 266-5915<br>rsheff@aclu-nm.org<br>mbrooks@aclu-nm.org<br><br>*\* Pro hac vice application<br>to be submitted* | Deepa Acharya\*<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>1300 I St. NW, Suite 900<br>Washington, DC 20005<br>202-538-8000<br>deepaacharya@quinnemanuel.com<br><br>Misha Boutilier\*<br>Sasha Boutilier\*<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>212-849-7000<br>mishaboutilier@quinnemanuel.com<br>sashaboutilier@quinnemanuel.com<br><br><br>*Counsel for Plaintiffs* |

## CERTIFICATE OF CONFERENCE

On November 3, 2023, I attempted to confer with Manuel Lucero, Assistant United States Attorney, via telephone to request the position of the office of the United States Attorney for the District of New Mexico regarding the foregoing Motion. I was not able to obtain the office's position regarding the Motion.

By: /s/ Rebecca Sheff
Rebecca Sheff

## CERTIFICATE OF SERVICE

I hereby certify that, this 3rd day of November, 2023, I filed a copy of the foregoing pleading electronically through the CM/ECF system, which gave service to all counsel of record.

By: /s/ Rebecca Sheff
Rebecca Sheff