IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARLOS DOE, LUIS DOE,
and GABRIEL DOE,

      Plaintiffs,

v.                                                  Case No. 1:23-cv-00971-MLG-JMR

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, *et al.*,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM

Plaintiffs are three immigration detainees seeking asylum in the United States. Doc. 2 at 1. They request leave to proceed under the pseudonyms of Carlos, Luis, and Gabriel Doe[1] and for their unredacted complaint to be filed under seal. *Id.* The Court, having reviewed the parties' submissions and the applicable law, grants Plaintiffs' Motion for Leave to Proceed Under Pseudonym ("Motion"). Doc. 2.

### BACKGROUND

Plaintiffs are noncitizens who sought protection in the United States after suffering gravely at the hands of Venezuelan police and government officials.[2] *Id.* at 4. Upon their arrival in the country, they were taken into custody by United States Immigration and Customs Enforcement

---

[1] A fourth pseudonymous plaintiff, Ernesto Doe, was voluntarily dismissed from this case prior to the entry of this order. Doc. 74.

[2] Luis Doe seeks protection following torture at the hands of Venezuelan police, as does Gabriel Doe following death threats due to his political beliefs. Doc. 2 at 6. Carlos Doe opposed the Venezuelan government and was threatened for doing so. *Id.* at 7.

("ICE") and housed at the Torrance County Detention Facility ("TCDF"). *See* Doc. 1 at 4-6. They have remained in detention since the latter half of 2023, *id.* at 5-6, although they have since been transferred to other facilities.[3] Plaintiffs allege, inter alia, that the conditions at TCDF are inhumane and further charge that ICE should not have certified the facility as compliant with the applicable Performance-Based National Detention Standards. *See generally id.* at 41, 45. They seek judicial review of that decision. *See id.* at 45-47.

Plaintiffs filed the instant motion contemporaneous to their complaint. *See* Doc. 1; Doc. 2. They claim that public disclosure of their identities may subject them to persecution if they are returned to Venezuela. Doc. 2 at 7. More immediately, Plaintiffs worry that their participation in this action may lead to retribution from ICE or detention center staff. *Id.* at 7-8; Doc. 40 at 2, 7-8; *see also* Doc. 41-1 (collection of documents discussing staff sharing between TCDF and Cibola, where two of the Plaintiffs are currently detained).

The Defendants have a different perspective. They characterize Plaintiffs' concerns as "unjustified" and challenge both the factual and legal grounds for the pending request. *See generally* Doc. 33. Defendants argue that Plaintiffs offer no evidence supporting their assertions of potential danger to themselves or their families from Venezuelan authorities and offer no cognizable explanation for why anonymity is justified on this ground. *Id.* at 3-6. Defendants also contend that Plaintiffs' fear of retaliation from TCDF personnel is unjustified because none of the Plaintiffs remain at TCDF and because they have not established any imminent personal danger resulting from potential disclosure. *Id.* at 7. Finally, because Plaintiffs challenge government action

---

[3] Apparently, Carlos Doe is now held in the El Paso Special Processing Center, while Luis and Gabriel Doe are detained in the Cibola County Correctional Facility ("Cibola"). *See* Doc. 33-1 at 2.

as class representatives, the public and the putative class have a heightened interest in open and transparent proceedings. *Id.* at 10-12.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that pleadings contain the name of the parties, *see* Fed. R. Civ. P. 10(a), and that the action be prosecuted in the name of the real party in interest. *See* Fed. R. Civ. P. 17(a)(1). There is no statute or rule expressly allowing a plaintiff to proceed anonymously, and the Tenth Circuit has repeatedly observed that doing so is, "by all accounts, an unusual procedure." *Luo v. Wang*, 71 F.4th 1289, 1296 (10th Cir. 2023) (citing *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000)). Consequently, a plaintiff may proceed anonymously or pseudonymously "only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998) (citing *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)). In determining whether anonymity is warranted, the Court weighs the movant's privacy interest against the public's interest in open proceedings. *See id.* at 802-803 (observing that the decision to grant anonymity involves the "weighing of a privacy issue against the public interest"). The decision to allow a party to proceed anonymously falls within the Court's "informed discretion, after taking all relevant factors into consideration." *Luo*, 71 F.4th at 1296-97 (citing *Zavaras*, 139 F.3d at 803).

## ANALYSIS

### I.     Exceptional Circumstances

Plaintiffs argue that because they may still be removed from the United States, they face a significant risk of physical harm—i.e., retribution and further torture—if they are sent back to Venezuela. Doc. 2 at 6-8. They raise the specter of harm to their family members if Venezuelan

authorities learn that Plaintiffs seek asylum in the United States. *Id*. Plaintiffs also fear the potential of direct retaliation from ICE and TCDF personnel while they remain in custody. *Id.* at 7-8; Doc. 40 at 6-7.

Defendants contend that Plaintiffs' concerns are unfounded speculation, especially because the core issues in this litigation are unrelated to Plaintiffs' reasons for leaving Venezuela. Doc. 33 at 3. While the Court agrees that it is unlikely Venezuelan authorities would retaliate against Plaintiffs for raising administrative claims against ICE, there is more to it. The reasons Plaintiffs sought protection in the United States are discussed in their complaint. *See* Doc. 1 at 5-6. Assuming those facts are true, public disclosure of that information plainly gives rise to the distinct possibility of retaliation if Plaintiffs are returned to Venezuela. *See Poozesh v. Pompeo*, No. 1:19-cv-01466, 2019 WL 6052363, at *2 (E.D. Cal. Nov. 15, 2019) (noting that "retaliation from a foreign government" has been recognized by several courts "as a sufficient basis to proceed anonymously."); *see also Int'l Refugee Assistance Project v. Trump*, Civ. No. TDC-17-0361, 2017 WL 818255, at *2 (D. Md. Mar. 1, 2017) ("Potential retaliatory physical or mental harm against individuals in another country can form the basis for permitting plaintiffs to use pseudonyms."). And numerous courts have recognized the unique vulnerabilities of asylum seekers and allowed them to proceed pseudonymously as a result. *See Kiakombua v. McAleenan*, No. 19-cv-1872, 2019 WL 11322784, at *3 (D.D.C. July 3, 2019) (asylum seekers "fall within a particularly vulnerable class of migrants for whom confidentiality about the nature and existence of their claims is particularly important" (text only)); *B.S.L. v. Garland*, No. 21-9519, 2022 WL 985817, at *1 (10th Cir. Apr. 1, 2022) (allowing petitioner, a Jamaican asylum seeker, to proceed using only initials given his "concerns for his safety upon removal"); *Doe v. U.S. Citizenship & Immigr. Servs.*, No. 1:21-cv-00576, 2021 WL 1907562, at *4 (E.D. Cal. May 12, 2021) (permitting asylum seeker to

remain anonymous based on the severity of harm and the seeker's fears and vulnerability to retaliation weighed against the public interest).

Of course, Plaintiffs' fears are (at least for now) hypothetical. For this reason, Defendants assert that Plaintiffs must provide substantive evidence of harm to justify their anonymity. Doc. 33 at 6. They cite to *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61, 73 (1st Cir. 2022) for the proposition that "the district court should require a declaration or affidavit" to address the need for anonymity.[4] *Id.* But the Tenth Circuit has not adopted that standard. Plaintiffs in this Circuit must only "establish[]" the risk of "real, imminent personal danger" if their names are disclosed. *Femedeer*, 227 F.3d at 1246. Here, the Court finds that Plaintiffs have done so. They explain that they fled Venezuela due to government persecution, torture, and abuse and that they seek immigration relief in the United States. Doc. 1 at 5-6; Doc. 2 at 7. This position puts them at odds with the government of Venezuela—which has already inflicted real harm on Plaintiffs—where their family members still reside and to which they themselves risk returning if they do not receive asylum in the United States.[5]

---

[4] Defendants also point to two more out-of-circuit cases that are factually distinct from the circumstances presented here, *In re Sealed Case*, 971 F.3d 324, 327-28 (D.C. Cir. 2020) and *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1248 n.7 (11th Cir. 2020), and an unpublished Tenth Circuit case entirely unrelated to pseudonym usage, *United States v. Aguirre*, 245 F. App'x 801, 802-03 (10th Cir. 2007). *See* Doc. 33 at 6. None of these cases establish that Plaintiffs must provide declarations in support of their Motion.

[5] The parties also raise 8 C.F.R. § 208.6 and § 1208.6, two regulatory provisions prohibiting the disclosure of information contained in certain immigration records. *See* Doc. 2 at 7; Doc. 33 at 4-5. These regulations do not forbid such records from being disclosed to federal, state, and local courts in legal actions "[a]rising from the proceedings of which the [records are] a part." 8 C.F.R. § 208.6(c)(2)(ii). But in this case, the Court only has the Plaintiffs' representations before it, not their immigration records. Neither regulation is applicable or determinative as to Plaintiffs' anonymity.

Moreover, Plaintiffs' fears of retaliatory harm are not limited to potential torture at the hands of Venezuelan authorities. They point out that TCDF personnel have a history of retaliatory conduct against inmates, *see* Doc. 2 at 8; *see also* Doc. 1 at 18-19, and that TCDF is operated by CoreCivic, the same private company which operates the Cibola detention facility. Doc. 40 at 6. This puts Plaintiffs at particular risk of retaliation because they are challenging the contract which allows TCDF to operate in support of ICE's enforcement and detention efforts. *Id.* at 7.

Defendants respond that Plaintiffs are no longer detained at TCDF, ameliorating any risk of retaliation by TCDF personnel. Doc. 33 at 7. This is true: two of three Plaintiffs are currently detained at Cibola and the third is detained at the El Paso Special Processing Center. Doc. 33-1 at 2. However, Cibola and TCDF are operated by the same private prison company, and medical staff members "float[] between" the two facilities and others. Doc. 40 at 7; Doc. 41-1 at 8. As a result, two Plaintiffs still risk encountering TCDF staff at Cibola. Furthermore, ICE has the authority to transfer Plaintiffs back to TCDF at any time based on the needs and decisions of the facilities in question. Doc. 40 at 7. While these risks are more speculative than the risks of continued harm if Plaintiffs are returned to Venezuela, they nonetheless contribute to the many potential dangers Plaintiffs face if their identities are revealed in this case.

Accordingly, the Court finds that Plaintiffs have adequately demonstrated a "real danger of physical harm" if their names are disclosed, whether from violence by the Venezuelan government if they are removed from the United States or from retaliation by ICE or detention facility personnel at Cibola or TCDF. *Zavaras*, 139 F.3d at 803.

## II.     Public Interest

The public's interest in transparency must be weighed against the Plaintiffs' privacy interests. *See id.* at 802-03. Plaintiffs first argue that the public faces minimal prejudice if they

proceed by pseudonym because the core issues and developments in the case will be publicly accessible. Doc. 2 at 8-9.The Government challenges this argument, asserting that the public interest is heightened when parties seek to "alter the operation of public law" or when the litigation involves the use of public funds. Doc. 33 at 9-10 (first citing *In re Sealed Case*, 971 F.3d at 329 and then *Zavaras*, 139 F.3d at 803). This case is different. Unlike *In re Sealed Case*, where an anonymous oil refinery sought to alter statutory energy regulations, 971 F.3d at 325, 329, Plaintiffs do not challenge existing laws. *See generally* Doc. 1. To the extent this litigation implicates the use of public funds, Plaintiffs seek to hold ICE and other federal agencies to account for alleged violations of regulations governing ICE's contract with TCDF. *See id.* at 48-49. It is not clear how allowing Plaintiffs to proceed anonymously abrogates the public's interest in determining ICE's compliance with federal contracting regulations. Therefore, the Court finds that the public's interest in transparent proceedings regarding the operation of public law and funding sources does not outweigh Plaintiffs' privacy concerns.

Plaintiffs also contend that proceeding by pseudonym is especially appropriate in official-capacity suits because disclosure of their identities may have a chilling effect on other at-risk plaintiffs. Doc. 2 at 9. The Tenth Circuit has yet to provide guidance on the potential deterrent effect of requiring such individuals to litigate under their true identities. However, the Ninth Circuit has observed in the employment context that fear of reprisal can "chill employees' willingness to challenge employers' valuation of their rights." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1073 (9th Cir. 2000). Extending that logic, requiring asylum seekers to use their true identities when they reasonably fear harmful retribution—both domestically and abroad—could dampen others' willingness to challenge potentially unlawful government actions. *See Al Otro Lado, Inc. v. Nielsen*, No. 17-cv-02366, 2017 WL 6541446, at *7 (S.D. Cal. Dec. 20, 2017).

While Defendants correctly point out that Plaintiffs' concerns are speculative at this point, Doc. 33 at 11, those concerns are not remote. Plaintiffs have established that they reasonably fear reprisal and harm if their identities are publicly revealed in this litigation. It is not hard to foresee the potentially chilling effect on other similar plaintiffs who may seek legal remedies for wrongful government conduct. Contrary to Defendants' position, the potential deterrent effect of requiring Plaintiffs to proceed under their own names weighs in favor of granting their request for anonymity.

Finally, Defendants argue that because Plaintiffs seek class-wide relief under Federal Rule of Civil Procedure 23, the identity of the representative plaintiffs is even more important than usual. *Id.* at 10-11. They reason that as potential class representatives, Plaintiffs must "fairly and adequately protect the interests of the class," and if they proceed pseudonymously, class members will find it difficult to challenge Plaintiffs' ability to represent them. *Id.* Plaintiffs reply to this argument by distinguishing Rule 23(b)(2) classes—the type involved in this case—from Rule 23(b)(3) classes, which have heightened protections due to the monetary nature of the remedies sought and class members' rights to opt out of the litigation. Doc. 40 at 10-11; *see also* Fed. R. Civ. P. 23(c)(2) (distinguishing Rule 23(b)(3) classes and allowing opt-out procedure for those individuals).

Plaintiffs' reasoning is persuasive. They seek only declaratory and injunctive relief for the putative class. Doc. 1 at 48-49. Rule 23(b)(2) class members cannot opt out of the litigation even if they are unsatisfied with their representation, making it less pressing that the public know the identifying details of their class representatives. Defendants are aware of Plaintiffs' true identities and can—no doubt, will—raise their adequacy as class representatives at the class certification stage, regardless of whether they proceed anonymously. *See* Rule 23(a)(4). Further, several district

courts have presided over Rule 23(b)(2) cases with pseudonymous plaintiffs, underscoring the Court's confidence that this case can be adjudicated without disclosing Plaintiffs' names. *See, e.g., U.S. Navy SEALS 1-26 v. Austin*, 594 F. Supp. 3d 767 (N.D. Tex. 2022); *Doe v. Commissioner, N.H. Dep't of Health & Hum. Servs.*, No. 18-cv-1039, 2020 WL 2129717 (D.N.H. May 4, 2020); *Does 1-10 v. Univ. of Wash.*, 326 F.R.D. 669 (W.D. Wash. 2018).

In short, the public certainly has an interest in this case. But that interest does not outweigh the real dangers Plaintiffs face if they proceed under their true identities. The Court thus finds the scales tipped in favor of Plaintiffs' anonymity.

## CONCLUSION

Plaintiffs have adequately established that they face real harm if they proceed under their own names. They have also shown that the public's interest in this case does not outweigh their interest in anonymity. Accordingly, Plaintiffs have justified their request to proceed anonymously. The Court grants Plaintiffs' Motion. Doc. 2. Plaintiffs may proceed under the pseudonyms Carlos, Luis, and Gabriel Doe. Plaintiffs' unredacted complaint shall remain under seal. Plaintiffs shall file a publicly accessible redacted complaint using their pseudonyms within fourteen days of the issuance of this order.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA